[No. 7807.  Department Two.  September 25, 1909.]

OLIVE A. PEDERSON *et al.*, *Appellants*, v. SKAGIT COUNTY, *Respondent*.[1]

BRIDGES—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  A county is not guilty of negligence from the fact that the sweep at the center of the draw span of a bridge was placed in position for use in emergency, pointing diagonally across the bridge, three feet from the floor, without any light thereon, the night being dark, and which resulted in the death of a person running across the bridge, where the bridge was closed to traffic and in jeopardy from high water, and the deceased had been warned off the bridge and knew of the emergency and that the draw span might be opened at any time.

SAME—CONTRIBUTORY NEGLIGENCE.  In such a case, the deceased was guilty of contributory negligence in running against the sweep, and assumed the risks, where others crossing the bridge at the same time saw the sweep and avoided it, the way was dark requiring caution, and he was not in the walkway prepared for footmen.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered May 28, 1908, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for wrongful death.  Affirmed.

*Million, Houser & Shrauger*, for appellants.

*Augustus Brawley*, for respondent.

MOUNT, J.—The appellants are the surviving wife and minor children of Halvor Pederson, deceased.  They brought

[1]Reported in 103 Pac. 1125.

this action to recover damages for the death of Halvor Pederson, caused by the alleged negligence of the respondent. The case was tried to the court without a jury, and at the close of the trial the court found that respondent "was guilty of no act or acts of negligence by which decedent lost his life," and "that decedent was guilty of contributory negligence, and that he lost his life by reason thereof." The cause was thereupon dismissed, and the plaintiffs have appealed.

The assignments of error are all based upon the facts, and the case is presented here for review of the facts by this court. They are briefly as follows: The Skagit river runs south through the city of Mount Vernon, in Skagit county. It divides the city into two parts, these parts are connected by a bridge something over 900 feet in length by 18 feet in width in the clear. This bridge is maintained by the county and forms a public highway for the citizens of Mount Vernon. Near the center of the bridge is a drawspan about 270 feet in length. This drawspan swings on a large pier located in the river, and is operated by a gearing located in the middle of the span. This gearing is operated by hand power, by use of a beam called a sweep, which sweep is about 8 feet long, the handle or small end of which is round and about one and one-half or two inches in diameter. At the four corners of the drawspan, where the same connects with the bridge at each end of the span, are jacks which are used to lift the ends of the span from the stationary bridge when it is desired to open the draw. These jacks are also operated at the center of the drawspan by a hand lever. Dikes have been constructed along both banks of the river for the purpose of protecting the city from overflow in times of high water in the river.

For a day or two previous to the 15th day of November, 1906, the water in the Skagit river had been rising, and on that day was very high. The dikes were full and the bridge was in a dangerous condition. Driftwood and jams were continually forming on the protective pier of the drawspan,

and men were employed to work with saws and dynamite in order to save the bridge from damage. About 4 o'clock in the afternoon of that day the bridge was closed to traffic for teams, and chains were hung across the approaches to the drawspan. People who were loitering upon the bridge were warned to keep off because of the dangerous condition of the bridge. The chains above mentioned were frequently released by people who congregated on the bridge. About 7 o'clock in the evening of that day, the jacks were raised so that the drawspan might be readily opened in case a jam or floating objects should strike the drawspan. A line was fastened to the drawspan in order to swing the draw back into place in case that should become necessary. The sweep used to operate the drawspan was also placed into position so that it might be used without delay in case of an emergency.

The deceased, Halvor Pederson, lived with his family on the west side of the river. On the evening of November 15, 1906, in company with four other men, he left his residence for the purpose of examining the dikes on the east side of the river. The party crossed the bridge about 7:30 p. m. The chains were not up at that time and the sweep was not in position. Soon after that time, the deceased, while standing upon the bridge, was notified to keep off. A little later, while running across the drawspan of the bridge, and at about 8 o'clock, the deceased came in contact with the end of the sweep, which struck him in the groin or side, causing internal injuries from which he died the following day. The sweep was pointing diagonally across the bridge at the time. The upper or small end of the sweep was about three or three and one-half feet from the floor. There was but one stationary electric light on the bridge at that time. This light was located at or near the west end of the drawspan. Two of the employees on the bridge carried lanterns. There was no light at the sweep. The night was dark but the sweep could be seen a distance of four or five feet away. There was a walk two feet wide for footmen on the south side of the draw-

span. The deceased was thoroughly familiar with the bridge, and the condition of the water in the river, and the work that was being done at that time.

It is contended by the appellant that the respondent was negligent because the sweep mentioned was placed in the middle of the drawspan without a light and was therefore a dangerous obstacle. If the ordinary condition had existed there at this time, and the bridge had been open to travel, this contention would have much force. But an extraordinary condition existed at the time, for which the respondent was not responsible. The bridge was closed to traffic for the reason that it was in jeopardy. The drawspan was in readiness to be opened at any time, or to open itself by driftwood or other floating obstacles striking against it. When it was generally known that the drawspan was likely to open at any time without warning, and when persons were warned to keep off the span, as the deceased was, we think it was not negligence for the respondent to fail to hang a lantern on the sweep, and that persons using the bridge, knowing the conditions, did so at their own risk. This would preclude a recovery against the respondent.

We are furthermore of the opinion that the court was right in finding that the deceased was guilty of negligence himself. The evidence shows that the deceased was running at the time he was injured. It also shows that at least two other persons were near the sweep and saw it at the time the deceased was injured. They also saw the deceased run against the sweep. One or two other persons walking on the span shortly before or after the time of the injury saw the sweep in time to avoid it. The deceased was injured by reason of the fact either that he was running and could not avoid the sweep, or because he did not look when he might have seen it. In either event he was negligent because he knew that he was in a place of danger. He was not on the walkway prepared for footmen. The way was dark and it was therefore his duty to use more caution than under normal conditions.

It may be true that he was not warned against, and did not have in mind, this particular danger, but it was also true that he was warned generally to keep off the bridge and no particular dangers were pointed out, he therefore assumed all of the dangers which confronted him.

We have not followed the arguments made in the brief because we think either one of the points above considered is conclusive of the appellant's right to recover in the case. The judgment must therefore be affirmed.

RUDKIN, C. J., DUNBAR, PARKER, and CROW, JJ., concur.